# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| KHRISTOPHER PEPPER,   Plaintiff,  vs.  PRIME RATE PREMIUM FINANCE CORPORATION, COVINGTON SPECIALTY INSURANCE COMPANY, SEGUROS UNIVERSAL, INC. d/b/a ATL INSURANCE, LLC, and TAPCO UNDERWRITERS, INC.,   Defendants. | CIVIL ACTION FILE NO. |

## COMPLAINT

**COMES NOW** Plaintiff Khristopher Pepper ("Pepper" or "Plaintiff"), by and through undersigned counsel, and brings this action against Defendants Prime Rate Premium Finance Corporation ("Prime Rate"), Covington Specialty Insurance Company ("Coventry"), Seguros Universal, Inc., d/b/a ATL Insurance, LLC ("Seguros"), and TAPCO Underwriters, Inc. ("TAPCO"), alleging as follows:

## PARTIES

1. Pepper is a resident and citizen of the State of Iowa.

2. Prime Rate is a South Carolina company with its principal place of business located at 2141 Enterprise Drive, Florence, South Carolina 29501.

3. Prime Rate may be served with process by and through its Registered Agent, CT Corporation System, located at 1201 Peachtree Street NE, Atlanta, Fulton County, Georgia 30361.

4. Covington is a New Hampshire company with its principal place of business located at 945 East Paces Ferry Road, Suite 1800, Atlanta, Georgia 30326.

5. Covington may be served with process by and through its President, Greg Buonocore, at 945 East Paces Ferry Road, Suite 1800, Atlanta, Georgia 30326.

6. Seguros is a Georgia company with its principal place of business located at 2566 Shallowford Rd. NE, Ste. 109, Atlanta, GA 30345.

7. Seguros may be served with process by and through its Registered Agent, Victor Soto, at 2566 Shallowford Rd. NE, Ste. 109, Atlanta, GA 30345.

8. TAPCO is a North Carolina company with its principal place of business located at 3060 South Church Street, Burlington, NC 27215.

9. TAPCO may be served with process by and through its Registered Agent, CT Corporation System located at 289 S Culver St., Lawrenceville, GA, 30046.

## JURISDICTION

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and because Pepper is a citizen of a different state than the Defendants.

## VENUE

11. Venue is laid in this District pursuant to 28 U.S.C. § 1391 by virtue of the fact that this action seeks damages arising from a contract issued in the Northern District of Georgia.

## FACTS

### The Premises

12. At all times relevant hereto, Petroleum Realty II, LLC ("Petroleum Realty") and Florida Fuel Partners, LLC ("Florida Fuel") owned certain commercial real estate located at 4160 Fulton Industrial Blvd., Atlanta, Georgia 30336 (the "Premises").

13. At all times relevant hereto, Petroleum Realty and Florida Fuel leased the Premises to ASI Retail & Sales, Inc. ("ASI"), pursuant to a Lease and Services Agreement dated August 29, 2012 (the "Lease").

14. The Lease term was from October 1, 2012 through and including September 30, 2017.

15. In accordance with the Lease, ASI used the Premises to operate a gas station and convenience store.

### The Policy

16. On or about March 19, 2013, in connection with ASI's use of the Premises, Covington and RSUI Indemnity Company ("RSUI") issued a commercial general liability policy under Policy Number VBA229033 00 (the "Policy") to Mitamurshed Enterprise & Petroleum Realty DBA ("Mitamurshed").

17. The Policy became effective on February 28, 2013. The policy period under the Policy was from February 28, 2013 to February 28, 2014.

18. Seguros was the Producer/Retail Agent for the Policy ("Agent") and TAPCO was the managing general agent.

19. For several years, Prime Rate and Agent had a business relationship whereby Agent would procure insurance policies for its insured and Prime Rate would offer premium finance solutions to the insured to pay the insurance premiums.

20. If the insured chose to finance its insurance policy, the insured would enter into a premium finance agreement with Prime Rate to repay the loan.

21. As part of the business relationship between Agent and Prime Rate, there was an electronic system in effect where Agent had access to all accounts of its insured with Prime Rate. Through the electronic system, Agent would receive

and could view all notices and/or matters related to any of its insured's accounts at any time.

22. The Agent procured the Policy for Mitamurshed.

23. On February 26, 2013, Mitamurshed entered into a premium finance agreement with Prime Rate (the "Agreement"), wherein Prime Rate agreed to advance loan proceeds for the full premium for the Policy. The Agreement was assigned Account No. 1198655.

24. The Agreement also contained a power of attorney allowing Prime Rate to cancel the Policy in the event the insured failed to make the agreed-upon loan payments.

25. On March 12, 2013, TAPCO issued a policy endorsement amending the declaration page of the Policy to change the "Named Insured" to "ASI Retail & Sales" and adding "Petroleum Realty & Florida Fuel Partners, LLC" as an additional insured.

26. On June 19, 2013, Prime Rate sent a Notice of Cancellation to Covington requesting that Covington cancel the Policy for non-payment of an installment due under the Agreement.

27. On June 25, 2013, Covington issued ASI a Notice of Cancellation or Refusal to Renew notifying ASI that the Policy was cancelled on June 18, 2013, at the request of Prime Rate.

## The Shooting

28. On October 9, 2013, Plaintiff visited the Premises to purchase a soft drink. Before he entered the Premises, two unidentified males confronted Plaintiff and shot him in the right/dominant arm (the "Shooting"). Plaintiff suffered significant and permanent injuries as a result of the Shooting, requiring multiple surgical procedures.

29. On August 11, 2015, Plaintiff filed a lawsuit against Petroleum Realty, Florida Fuel and ASI in the State Court of Fulton County, Georgia under Civil Action File No. 15EV002224, alleging, *inter alia*, that those parties were responsible for the Shooting because they were negligent in failing to keep the Premises safe for Plaintiff (the "Lawsuit").

30. In the Lawsuit, Plaintiff claimed $146,873.95 in special damages, and requested an award of general damages in an amount to be determined by the jury.

31. On September 14, 2015, Florida Fuel and Petroleum Realty removed the Lawsuit to this Court under Case Number 1:15-cv-03215. ASI consented to the removal.

32. On October 5, 2015, Florida Fuel and Petroleum Realty filed a Cross-Claim against ASI, alleging, *inter alia*, that pursuant to the Lease, ASI is obligated to defend Florida Fuel and Petroleum Realty in the Lawsuit, and is also obligated

to indemnify them for any sums Florida Fuel and Petroleum Realty become obligated to pay Plaintiff as a result of the Lawsuit.

33. On October 6, 2015, Florida Fuel and Petroleum Realty moved the District Court for leave to file a Third-Party Complaint against the individual guarantors of the Lease, alleging, *inter alia*, that the individual guarantors are also obligated to indemnify Florida Fuel and Petroleum Realty for any sums they become obligated to pay Plaintiff as a result of the Lawsuit.

34. On October 7, 2015, the Court entered an Order authorizing the Third-Party Complaint.

35. On October 5, 2015, Plaintiff made a settlement demand on Florida Fuel and Petroleum Realty for $1 million. Plaintiff also served Florida Fuel and Petroleum Realty with a related Offer of Settlement for $1 million under O.C.G.A. § 9-11-68.

36. On October 6, 2015, Florida Fuel and Petroleum Realty made a bad faith time limit demand on Covington to pay $1 million to allow Florida Fuel and Petroleum Realty to satisfy Plaintiff's demand.

37. Florida Fuel's and Petroleum Realty's settlement demand also notified Covington that the Policy was not properly cancelled under Georgia law.

38. On November 16, 2015, Covington acknowledged receipt of Plaintiff's demand and Florida Fuel's and Petroleum Realty's bad faith time limit demand; however, they continued to refuse to defend the Lawsuit or provide coverage on the basis that the Policy was effectively cancelled on June 18, 2013, notwithstanding having received notice that the Policy was not properly cancelled under Georgia law.

39. Given Covington's wrongful refusal to defend the Lawsuit, ASI, Florida Fuel and Petroleum Realty became entitled to handle their own defense and settle the claims against them. Bradshaw v. St. Paul Fire & Marine Ins. Co., 226 F.Supp 569 (N.D. Ga. 1964); Henning v. Continental Casualty Co., 254 F.3d 1291 (11th Cir. 2001).

40. On November 19, 2015, all of the parties to the Lawsuit participated in mediation and settled the claims between them (the "Settlement").

41. The Settlement between Plaintiff and Florida Fuel and Petroleum Realty was memorialized by way of a Confidential General Release and Settlement Agreement (the "Pepper/Florida Settlement Agreement"), which, among other things, caused Florida Fuel and Petroleum Realty to transfer and assign to Plaintiff all of their rights in and to the Consent Judgment as to Crossclaims entered against ASI in the amount of $1,5000,000, and caused them to transfer and assign to Plaintiff all of their rights and interests in the Policy.

8

42. The Settlement between Plaintiff and ASI was memorialized by way of a Confidential General Release and Settlement Agreement (the "Pepper/ASI Settlement Agreement"), which, among other things, required ASI to enter into a Consent Judgment in favor of Plaintiff in the amount of $1,500,000, and caused ASI to transfer and assign to Plaintiff all of its rights and interests in the Policy.

43. The Settlement between Florida Fuel and Petroleum Realty and ASI was memorialized by way of a General Release and Settlement Agreement (the "Florida/ASI Settlement Agreement"), which, among other things, required ASI to enter into the Consent Judgment as to Crossclaims, and caused ASI to transfer and assign to Florida Fuel and Petroleum Realty all of its rights and interests in the Policy, which rights and interests were transferred to Plaintiff by way of the Pepper/Florida Settlement Agreement.

44. The Settlement between Florida Fuel and Petroleum Realty and the individual guarantors of the Lease was memorialized by way of a General Release and Settlement Agreement (the "Florida/Guarantors Settlement Agreement"), which, among other things, required the individual guarantors to cause ASI to enter into a Consent Judgment as to Crossclaims.

45. On February 10, 2016, the parties moved the District Court to dismiss the remaining claims in the Lawsuit, which claims were dismissed by Court Order entered on February 11, 2016.

**The Declaratory Action**

46.     On March 4, 2016, Plaintiff filed a Petition for Declaratory Judgment against Covington, RSUI and Prime Rate (the "Petition") seeking, *inter alia*, a declaration that cancellation of the Policy was ineffective.

47.     The Petition was filed in this Court under Case Number 1:16-cv-00693.

48.     Covington and Prime Rate moved the Court for summary judgment on the Petition and Plaintiff filed a response.

49.     On June 23, 2017, the Court issued its related Opinion and Order (the "Order").  In the Order, the Court determined that "**the Policy was wrongfully canceled**" but did not award Plaintiff damages.

50.     However, the Court did indicate that Plaintiff was not prevented from seeking recovery under other causes of action, such as those found in the laws of torts or contract.

**COUNT ONE**
**Breach of Contract**
*(Covington Seguros and TAPCO)*

51.     Plaintiff incorporates and re-alleges paragraphs 1 though 50 above as if fully set forth herein.

52.     The Policy was a contract between ASI on the one hand and Covington, Seguros and TAPCO on the other.

53. ASI assigned all of its legal and beneficial rights, title and interest in and to the Policy to Plaintiff.

54. Under every contract, including the Policy, there is an implied duty of good faith and fair dealing requiring the parties to the contract to perform their promises and provide such cooperation as is required for the other party's performance.

55. Where the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith.

56. ASI was required to pay Prime Rate $2,794.08 to finance the Policy. Of that amount, ASI was required to pay Prime Rate a down payment in the amount of $880.00. Prime Rate financed the difference in the amount of $1,914.08 at an annual interest rate of 14.34% over a period of nine (9) months.

57. Through various Policy endorsements, Covington and/or Seguros and/or TAPCO reduced ASI's annual premium from $2,794.08 to $1,778.00. However, ASI was not notified of the reductions despite the fact that these Policy endorsements became effective on the same day the Policy became effective.

58. As a result, ASI unknowingly overpaid Prime Rate for the coverage provided under the Policy (*i.e.*, the total annual premiums due under the Agreement were overstated by $1,016.08 - the total annual premium listed was $2,794.08 when it should have been $1,778.00).

11

59.     Prime Rate, Covington, Seguros, and/or TAPCO knew or should have known that ASI was overpaying Prime Rate the annual premium due under the Policy.

60.     With a cash down payment of $880.00, the total premiums financed by Prime Rate should have been $898.00 instead of $1,914.08

61.     Given Prime Rate's finance charges, financed over a period of nine (9) months, ASI's monthly payment to finance $898.00 of premiums at 14.34% interest would have been approximately $105.79 per month.

62.     The remaining monthly payments of $105.79 would have been due on the 28th day of each month thereafter.

63.     Following the $880.00 down payment, ASI paid Prime Rate an additional $455.94, including $230.36 on March 28, 2013 and $225.58 on April 29, 2013, by way of check numbers 880 and 881, respectively.

64.     Those payments were enough to cover four (4) of the $105.79 monthly obligations that should have been due under the Agreement, including the payments due for March 2013, April 2013, May 2013 and June 2013. Consequently, no payments were or should have been due by ASI to Prime Rate for the month of June 2013.

65. Given that no premium payments were due under the Policy for the month of June 2013, Prime Rate's and Covington's cancellation of the Policy on June 18, 2013 was unwarranted.

66. Covington, Seguros and/or TAPCO breached their implied covenant of good faith and fair dealing under the Policy by: (i) knowingly causing ASI to overpay Prime Rate the annual premium due under the Policy; (ii) failing to provide ASI with credit for advanced premiums paid; and (iii) prematurely cancelling the Policy when they knew or should have known that no premium payments were then due by ASI because of the overpayment.

67. As a result of such breach, the Policy was wrongfully cancelled when it should have been available to provide ASI with insurance coverage in the Lawsuit.

68. As a further result of such breach, ASI was required to resolve the Lawsuit without insurance coverage, which lead to Consent Judgments against ASI and in favor of Plaintiff in the amount of $1,500,000.00.

69. ASI suffered damage in the amount of $1,500,000.00 as a result of the aforementioned breach of good faith and fair dealing.

70. Plaintiff is allowed to collect such damages from Defendants by way of assignment.

## COUNT TWO
## Breach of Fiduciary Duty
### *(Seguros and TAPCO)*

71. Plaintiff incorporates and re-alleges paragraphs 1 though 70 above as if fully set forth herein.

72. Upon information and belief, Seguros and TAPCO acted as ASI's agent in connection with ASI's procurement of the Policy.

73. As ASI's agent, Seguros and TAPCO owed a fiduciary duty to ASI.

74. For several years, Prime Rate, Seguros and TAPCO had a business relationship whereby Seguros and TAPCO would procure insurance policies for certain insured and Prime Rate would offer premium finance solutions to the insured to pay the insurance premiums.

75. If the insured chose to finance its insurance policy, the insured would enter into a premium finance agreement with Prime Rate to repay the loan.

76. As part of the business relationship between Seguros, TAPCO and Prime Rate, there was an electronic system in effect where Seguros and TAPCO had access to all accounts of its insured with Prime Rate. Through the electronic system, Seguros and TAPCO would receive and could view all notices and/or matters related to any of its insured's accounts at any time. This all was the case for the Policy that ASI had with Covington.

14

77. Given the business relationship between Seguros, TAPCO and Prime Rate, and given Seguros' and TAPCO's access to Prime Rate's electronic system, and the account that ASI had with Prime Rate, Seguros and TAPCO knew or should have known that ASI was overpaying Prime Rate the annual premium due under the Policy.

78. Seguros and TAPCO also knew or should have known that Prime Rate's and Covington's cancellation of the Policy on June 18, 2013 was unwarranted.

79. Seguros and TAPCO breached their fiduciary duty to ASI by: (i) knowingly causing ASI to overpay Prime Rate the annual premium due under the Policy; (ii) failing to insist that Prime Rate and Covington provide ASI with credit for advanced premiums paid; and (iii) allowing Prime Rate and Covington to prematurely cancel the Policy when they knew or should have known that no premium payments were then due by ASI because of the overpayment.

80. As a result of such breach, the Policy was wrongfully cancelled when it should have been available to provide ASI with insurance coverage in the Lawsuit.

81. As a further result of such breach, ASI was required to resolve the Lawsuit without insurance coverage, which lead to Consent Judgments against ASI and in favor of Plaintiff in the amount of $1,500,000.00.

82. ASI suffered damage in the amount of $1,500,000.00 as a result of the aforementioned breach of fiduciary duty.

83. Plaintiff is allowed to collect such damages from Defendants by way of assignment.

## COUNT THREE
### Breach of Contract
### *(Prime Rate)*

84. Plaintiff incorporates and re-alleges paragraphs 1 though 83 above as if fully set forth herein.

85. The Agreement was a contract between ASI on the one hand and Prime Rate on the other.

86. The Agreement concerns ASI's beneficial rights and interests in and to the Policy.

87. ASI assigned all of its legal and beneficial rights, title and interests in and to the Policy to Plaintiff.

88. Under every contract, including the Agreement, there is an implied duty of good faith and fair dealing requiring the parties to the contract to perform their promises and provide such cooperation as is required for the other party's performance.

89. Where the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith.

16

90. Prime Rate wrongfully cancelled the Policy under O.C.G.A. § 33-22-13.

91. Prime Rate is prevented from re-litigating the issue regarding its wrongful cancellation of the Policy by way of the doctrine of Collateral Estoppel.

92. Prime Rate breached its implied covenant of good faith and fair dealing to ASI by: (i) knowingly causing ASI to overpay it the annual premium due under the Policy; (ii) failing to provide ASI with credit for advanced premiums paid; (iii) prematurely cancelling the Policy when it knew or should have known that no premium payments were then due by ASI because of the overpayment; and (iv) wrongfully cancelling the Policy under O.C.G.A. § 33-22-13.

93. As a result of such breach, the Policy was wrongfully cancelled when it should have been available to provide ASI with insurance coverage in the Lawsuit.

94. As a further result of such breach, ASI was required to resolve the Lawsuit without insurance coverage, which lead to Consent Judgments against ASI and in favor of Plaintiff in the amount of $1,500,000.00.

95. ASI suffered damage in the amount of $1,500,000.00 as a result of the aforementioned breach of good faith and fair dealing.

96. Plaintiff is allowed to collect such damages from Prime Rate by way of assignment.

## COUNT FOUR
## Breach of Fiduciary Duty
### *(Prime Rate)*

97. Plaintiff incorporates and re-alleges paragraphs 1 though 96 above as if fully set forth herein.

98. Prime Rate acted as ASI's agent and attorney in fact in connection with ASI's right to cancel the Policy.

99. As ASI's agent, Prime Rate owed a fiduciary duty to ASI.

100. Prime Rate breached its fiduciary duty to ASI by: (i) knowingly causing ASI to overpay it the annual premium due under the Policy; (ii) failing to provide ASI with credit for advanced premiums paid; (iii) prematurely cancelling the Policy when it knew or should have known that no premium payments were then due by ASI because of the overpayment; and (iv) wrongfully cancelling the Policy under O.C.G.A. § 33-22-13.

101. As a result of such breach, the Policy was wrongfully cancelled when it should have been available to provide ASI with insurance coverage in the Lawsuit.

102. As a further result of such breach, ASI was required to resolve the Lawsuit without insurance coverage, which lead to Consent Judgments against ASI and in favor of Plaintiff in the amount of $1,500,000.00.

103. ASI suffered damage in the amount of $1,500,000.00 as a result of the aforementioned breach of fiduciary duty.

104. Plaintiff is allowed to collect such damages from Prime Rate by way of assignment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

1. That process issue as required by law, and that Defendants be served with a copy of the Summons and this Complaint;

2. That a jury trial be had;

3. That the Court enter an award of $1,500,000 in damages against Defendants and in favor of Plaintiff; and

4. For such other and further relief as the Court deems just and proper.

Dated: October 3, 2017

**THE MOORE LAW GROUP, LLC**

By:   /s/ John A. Moore
  John A. Moore (Ga. Bar No. 519792)
  1745 Martin Luther King Jr. Dr.
  Atlanta, GA 30314
  (678) 288-5601 – Phone
  (888) 553-0071 – Fax
  jmoore@moorelawllc.com

*Counsel for Plaintiff*