# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Khristopher Pepper,

                Plaintiff,       Case No. 1:17-cv-03871

v.                             Michael L. Brown
                             United States District Judge

Prime Rate Premium Finance
Corporation, et al.,

                Defendants.

_____/

## <u>OPINION & ORDER</u>

Defendants Seguros Universal, Inc., ("Seguros") Prime Rate Premium Finance Corporation ("Prime Rate"), Covington Specialty Insurance Company ("Covington"), and TAPCO Underwriters, Inc., ("TAPCO") moved to dismiss Plaintiff Khristopher Pepper's complaint. (Dkts. 17; 19; 22; 24.) Plaintiff opposes their motions. The Court grants Prime Rate's, Covington's, and TAPCO's motions and grants in part and denies in part Seguros's motion.

## I.    Background

Plaintiff makes the following allegations in his complaint. On October 9, 2013, Plaintiff Khristopher Pepper was shot in the arm while visiting the gas station located at 4160 Fulton Industrial Boulevard, Atlanta, Georgia. (Dkt. 1 ¶ 28.) At the time, Petroleum Realty, II, LLC, ("Petroleum Realty") and Florida Fuel Partners, LLC, ("Florida Fuel") owned the property and leased it to ASI Retail & Sales, Inc. ("ASI"). (*Id.* ¶¶ 12–13.)

In March 2013, before the shooting, Covington and RSUI Indemnity Company ("RSUI") issued a commercial general liability insurance policy in connection with ASI's use of the property to Mitamurshed Enterprise & Petroleum Realty DBA ("Mitamurshed") with a policy period from February 28, 2013, to February 28, 2014. (*Id.* ¶¶ 16–17.) Seguros was the producer/retail agent that obtained the policy for Mitamurshed and TAPCO was the managing general agent. (*Id.* ¶¶ 18, 22.) Mitamurshed also entered into a premium finance agreement with Prime Rate, in which Prime Rate agreed to advance loan proceeds to pay the full policy premium. (*Id.* ¶ 23.) That finance agreement gave Prime Rate power of attorney and the ability to cancel the policy should the insured fail to

make the agreed-upon loan payments.  (*Id*. ¶ 24.)  In March 2013, TAPCO amended the declaration page of the policy to change the named insured to ASI Retail & Sales and add "Petroleum Realty & Florida Fuel Partners, LLC" as an additional insured.  (*Id*. ¶ 25.)

In June 2013, Prime Rate sent Covington a notice of cancellation, requesting that Covington cancel the policy because the insured had not paid an installment due under the finance agreement.  (*Id*. ¶ 26.)  Later that month, Covington issued ASI a notice of cancellation or refusal to renew notifying ASI that the policy was cancelled on June 18, 2013, at Prime Rate's request.  (*Id*. ¶ 27.)

In October 2013, two unidentified males shot Plaintiff on the property when he visited the gas station to buy a soft drink.  (*Id*. ¶ 28.)  Plaintiff was injured and had multiple surgeries.  (*Id*.)

## A.     The First Lawsuit — *Pepper I*

In August 2015, Plaintiff sued Petroleum Realty, Florida Fuel and ASI in the State Court of Fulton County, Georgia, alleging they were negligent in failing to keep the premises safe for Plaintiff.  (*Id*. ¶ 29.)  Florida Fuel and Petroleum Realty removed the suit to federal court with ASI's consent.  *See* Notice of Removal, *Pepper v. Florida Fuel Partners,*

*LLC*, No. 1:15-cv-03215-TWT (N.D. Ga. Sept. 14, 2015), ECF No. 1 ("*Pepper I*"). Florida Fuel and Petroleum Realty filed a cross-claim against ASI, alleging that ASI must defend them in the lawsuit and indemnify them under the terms of their lease. (Dkt. 1 ¶ 32.) They also filed a third party complaint against the businesses that granted the lease, alleging those businesses also had to indemnify Florida Fuel and Petroleum Realty for any amount they had to pay. (*Id.* ¶¶ 33–34.)

Plaintiff made a $1 million settlement demand to Florida Fuel and Petroleum Realty, which then made a bad faith failure to settle demand on Covington for the same amount. (*Id.* ¶¶ 35–36.) In their demand, Florida Fuel and Petroleum Realty asserted that the policy was not properly cancelled under Georgia law. (*Id.* ¶ 37.) Covington refused to satisfy either demand, defend the lawsuit, or provide coverage under the policy, arguing it had cancelled the policy before the shooting. (*Id.* ¶ 38.)

The parties settled their claims. ASI entered into a consent judgment as to Florida Fuel and Petroleum Realty's crossclaims. (*Id.* ¶ 45.) Florida Fuel and Petroleum Realty transferred and assigned all of their rights in the cross-claim consent judgment against ASI and all of their rights and interests in the policy to Plaintiff. (*Id.* ¶ 41.) ASI also

transferred and assigned all of its rights and interests in the policy to Plaintiff. (*Id*. ¶ 42.) The settlements gave Plaintiff the right to recover up to $1,500,000 from the policy.

## B. The Second Lawsuit — *Pepper II*

In March 2016, Plaintiff sued Covington, RSUI, and Prime Rate in this Court seeking a declaratory judgment that the cancellation of the policy was ineffective and an award from the respondents in an amount equal to the settlement agreements. *See Pepper v. Covington Specialty Ins. Co.*, 262 F. Supp. 3d 1376, 1379 (N.D. Ga. 2017), *reconsideration denied*, No. 1:16-CV-693-TWT, 2017 WL 3499871 (N.D. Ga. Aug. 3, 2017) ("*Pepper II*"). The Court granted summary judgment. *Id*. at 1382. The Court found that Prime Rate had improperly cancelled the policy under Georgia law. *Id*. at 1380. It ruled, however, that RSUI and Covington were "both off the hook for the policy" because they had relied on Prime Rate's wrongful cancellation notice by cancelling the policy before Plaintiff's injury. *Id*. at 1381 (citing *Kolencik v. Stratford Ins. Co.*, 195 F. App'x 855, 857 (11th Cir. 2006)). It also dismissed the claims against Prime Rate, finding no implied cause of action against it for its failing to provide proper notice. *Id*.

### C.    The Present Lawsuit

In October 2017, Plaintiff brought the present suit against Defendants, alleging breach of contract claims against Covington, Seguros, TAPCO, and Prime Rate (Counts 1 and 3) and breach of fiduciary duty claims against Seguros, TAPCO, and Prime Rate (Counts 2 and 4).  (Dkt. 1.)  Plaintiff seeks an award of $1.5 million in damages.  (*Id*.)  Each of the Defendants have separately moved to dismiss Plaintiff's claims.  (Dkts. 17; 19; 22; 24.)

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."    Under Rule 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

When considering a motion to dismiss, the court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff, the non-movant. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).  But the court need

not accept as true any legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The court's "duty to accept the facts in the complaint as true does not require [the court] to ignore specific factual details of the pleading in favor of general or conclusory allegations." *Griffin Indus., Inc. v. Irwin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

A "district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005); *see also* FED. R. CIV. P. 12(d). But a court may consider exhibits attached to the complaint. *See* FED. R. CIV. P. 10(c). And the exhibits a plaintiff attaches to its complaint governs when they contradict the allegations of the complaint. *See Griffin Indus., Inc.*, 496 F.3d at 1206. A district court may also consider documents referenced in the complaint, even if they are not physically attached, if the documents are central to the complaint and no party questions their authenticity. *See Day*, 400 F.3d at 1276. A document is central to a complaint when it is a "necessary part of [the plaintiff's] effort to make out a claim." *Id.*; *see also Bryant v. Citigroup Inc.*, 512 F. App'x 994, 995 (11th Cir. 2013) ("Although ordinarily nothing

beyond the face of the complaint and the attached documents are considered in analyzing a motion to dismiss, [courts] make an exception where the plaintiff refers to a document in his complaint, it is central to his claim, the contents are not disputed, and the defendant attaches it to his motion to dismiss.").  Under those circumstances, the district court may consider the documents without converting the motion to dismiss into a motion for summary judgment.  *See Day,* 400 F.3d at 1275–76.

## III.   Discussion

### A.    Res Judicata

Defendants Prime Rate, TAPCO, and Covington assert that Plaintiff's claims are barred by the doctrines of res judicata and/or collateral estoppel.  The Court agrees.

In diversity cases like this one, federal courts must apply the rules of res judicata applied by the state in which the federal court is located.[1]

---

[1] In the past, there was a conflict of authorities in the Eleventh Circuit as to whether state or federal law should be applied in resolving res judicata issues.  *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 n.1 (11th Cir. 1998).  Even if federal law governed this issue, however, it would not affect the Court's analysis because the federal and Georgia standards for res judicata are substantially similar and require the same elements.  *Compare Stapler v. Boling*, 815 S.E.2d 602, 605 (Ga. Ct. App.

*See Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001))). The Court applies Georgia's law for res judicata in deciding this motion.

Georgia law provides that "a judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered." GA. CODE ANN. § 9-12-40. Georgia courts have interpreted this statute to prohibit plaintiffs from bringing "a second complaint against a defendant on a claim that has already been brought, after having previously been adjudged not to be entitled to the recovery sought on that claim." *Roth v. Gulf Atl. Media, etc.*, 536 S.E.2d 577, 580 (Ga. Ct. App. 2000).

Under Georgia law, res judicata applies if: (1) the parties, or their privies, in the suits are identical; (2) the causes of action in the suits are identical; and (3) the prior adjudication was made on the merits by a

---

2018), *with Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999).

court of competent jurisdiction.  *See QOS Networks Ltd. v. Warburg, Pincus & Co.*, 669 S.E.2d 536, 540 (Ga. Ct. App. 2008).  The party against whom the doctrine is raised also must have had a "full and fair opportunity to litigate the issues in the first action."  *Id.*

### 1.    Identical parties or privies

Res judicata's preclusive effect applies where the parties in the current and prior suits are identical.[2]  *Id.*  Plaintiff named Covington and Prime Rate as defendants in both the instant suit and his prior suit, *Pepper II.  See Pepper II*, 262 F. Supp. 3d at 1379.  The "identical parties" requirement is satisfied for those parties.

Although Plaintiff did not name TAPCO in the *Pepper II* suit, TAPCO asserts that it is in privity with Covington.  Under Georgia law, "[a] privy is generally defined as one who is represented at trial and who is in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same

---

[2] All parties on the respective sides of litigation, however, need not be identical.  *See Waggaman v. Franklin Life Ins. Co.*, 458 S.E.2d 826, 827–28 (Ga. 1995).  Res judicata requires only that both cases include "those by and against whom the defense of res judicata is invoked."  *Id.* (quoting *Gamble v. Gamble*, 48 S.E.2d 540, 545 (Ga. 1948)).

legal right." *ALR Oglethorpe, LLC v. Henderson*, 783 S.E.2d 187, 192 (Ga. Ct. App. 2016) (quoting *Brown & Williamson Tobacco Corp. v. Gault*, 627 S.E.2d 549 (Ga. 2006) (internal quotation marks omitted)). TAPCO was Covington's managing general agent for the policy. (*See* Dkts. 1 ¶ 18; 22-1 at 14–15.) TAPCO also acted as the surplus lines broker for the policy. (Dkt. 27-2 at 4.) Because TAPCO held these roles with respect to the insurance policy, the Court finds TAPCO was Covington's agent. *See* GA. CODE ANN. § 33-47-2(3)(A);[3] *see also Looking Good Props. LLC v. Johnson & Johnson Inc.*, No. CV412-138, 2013 WL 12122685, at *1 (S.D. Ga. June 14, 2013) (explaining that "Georgia law defines a surplus line broker as 'an individual who is licensed in this state to sell, solicit, or negotiate insurance on properties, risks, or exposures located or to be performed in this state with nonadmitted insurers.' " (quoting GA. CODE ANN. § 33-5-20.1(8))). And Plaintiff does not dispute TAPCO's argument that it was in privity with Covington. (Dkt. 28 at 11 (arguing that

---

[3] Section 33-47-2 defines "managing general agent" as "any person, firm, association, or corporation who negotiates and binds ceding reinsurance contracts on behalf of an insurer or manages all or part of the insurance business of an insurer . . . and acts as an agent for such insurer." GA. CODE ANN. § 33-47-2(3)(A).

TAPCO should be considered a party to the insurance policy in the light of its arguments that it was in privity with Covington).) TAPCO was Covington's privy for claims relating to the insurance policy for purposes of res judicata, thus satisfying the identical parties requirement.

## 2. Identical Causes of Action

Res judicata precludes a claim where the cause of action is identical to the one raised in a prior suit. *See QOS Networks*, 669 S.E.2d at 540. In determining whether a cause of action is identical to a prior one, courts "examine the subject-matter and the issues as raised by the pleadings in the two cases" to decide whether both claims arose from the same set of facts. *QOS Networks*, 669 S.E.2d at 540–41 (quoting *Gamble v. Gamble*, 48 S.E.2d 540, 544 (Ga. 1948)). Georgia courts prohibit plaintiffs from splitting up claims arising from the same transaction and bringing them individually in multiple suits. *See Flagg Energy Dev. Corp. v. Gen. Motors Corp.*, 509 S.E.2d 399, 402 (Ga. Ct. App. 1998) (holding that res judicata applied where a plaintiff lost in a breach of contract suit over the sale of defective goods and then brought a suit for breach of a settlement agreement that resulted from same sale of defective goods because both actions stemmed from the same transaction). Indeed, "from a single

wrong but one cause of action can arise." *Id.* (quoting *Garrett v. Transus, Inc.*, 341 S.E.2d 494, 495 (Ga. Ct. App. 1986)).

Res judicata also bars claims a plaintiff *could have* brought in the prior suit. *See QOS Networks*, 669 S.E.2d at 541. This means a plaintiff must "assert all claims for relief concerning *the same subject matter* in one lawsuit[,] and any claims for relief concerning that same subject matter which are not raised will be res judicata pursuant to OCGA § 9-12-40." *CenTrust Mortg. Corp. v. Smith & Jenkins, P.C.*, 469 S.E.2d 466, 468 (Ga. Ct. App. 1996) (quoting *Fowler v. Vineyard*, 405 S.E.2d 678, 682 (Ga. 1991)).

In *Pepper II*, Plaintiff sought several declarations, including that the cancellation of the policy was ineffective; the defendants were required to defend the *Pepper I* lawsuit; their refusal to defend the lawsuit was wrongful and they are bound by Plaintiff's settlements with ASI, Florida Fuel, and Petroleum Realty; and Plaintiff is entitled to damages. *See* First Amended Complaint, *Pepper II*, No. 1:16-cv-00693-TWT (N.D. Ga. June 2, 2016), ECF No. 18. Plaintiff sued Covington and Prime Rate in that case over their alleged wrongful cancellation of the insurance policy, claiming the policy was still in effect. The same conduct

is the subject of the instant suit.  Just as the court in *Flagg* barred the plaintiff's second breach of contract claim because it originated from the same transaction as the first claim, Plaintiff here relies upon the same transaction in this claim — the policy cancellation — as he did in his first claim.  In fact, many of the allegations Plaintiff makes in his complaint repeat verbatim the allegations he made in *Pepper II* against Prime Rate and Covington.  *Compare* First Amended Complaint, *Pepper II*, ECF No. 18, *with* Dkt. 1.

Although Plaintiff's present causes of action are different from those he brought in the original suit, these differences are in name only. In assessing the substance of the actions, it is undisputed that Plaintiff's current breach of contract and breach of fiduciary duty claims arise from the same policy cancellation as Plaintiff's previous claim under § 33-22-13.  The Court found Covington was "off the hook" for the policy because they relied on the improper cancellation notice.  This precludes any claim against it (or TAPCO) based on that policy.  It also concluded that Prime Rate could not be held liable for its improper cancellation — the same conduct Plaintiff seeks to use against it here.  The second res judicata element is thus satisfied.

### 3. A court of competent jurisdiction has made a final adjudication on the merits

Res judicata applies only where a court of competent jurisdiction makes a final adjudication on the merits of the prior case. *See QOS Networks*, 669 S.E.2d at 540. Because none of the parties dispute that this Court is a court of competent jurisdiction, the only issue is whether the Court made a final adjudication on the merits in the previous action, *Pepper II*.

A final adjudication on the merits does not require that the prior action was "determined on the merits, in the moral or abstract sense of these words." *Piedmont Cotton Mills, Inc. v. Woelper*, 498 S.E.2d 255, 256 (Ga. 1998) (finding a court adjudicated the merits of a claim where the previous court held that a plaintiff was not entitled to relief because it did not comply with the substantive requirements of a quiet title action and was therefore barred from bringing a later claim) (quoting *Gamble*, 48 S.E.2d at 545). An adjudication is final where, in the previous action, the parties *might* have had their suit disposed, if their case was properly presented. *Id.* Further, a summary judgment decision satisfies this element of res judicata. *See Summer-Minter & Assocs., Inc. v. Giordano*, 203 S.E.2d 173, 176 (Ga. 1974) (holding that summary judgment is an

adjudication on the merits because each party has a duty to present his or her case in full once the motion is made and "a party against whom summary judgment has been granted is in the same position as if he suffered a verdict against him"); *see also ChoicePoint Servs., Inc. v. Hiers,* 644 S.E.2d 456, 458 (Ga. Ct. App. 2007) (finding that an order granting summary judgment was a final adjudication on the merits of a quantum meruit claim).

Section 9-12-42 of the Georgia Code Annotated limits res judicata's scope. It provides that "[w]here the merits were not and could not have been in question, a former recovery on purely technical grounds shall not be a bar to a subsequent action." GA. CODE ANN. § 9-12-42. In other words, "where the merits were not *and* could not have been determined under a proper presentation and management of the case," res judicata is not a viable defense. *Piedmont Cotton* Mills, 498 S.E.2d at 256.

The Court's previous order in *Pepper II* granting summary judgment to Prime Rate, Covington, and RSUI operates as a final adjudication on the merits. In that order, Judge Thrash held that Plaintiff was not entitled to relief because the policy had been cancelled and because there was no implied cause of action on the part of a third-

party beneficiary of an insurance contract for failure to adhere to the requirements of § 33-22-13. *Pepper II*, 262 F. Supp. 3d at 1382. The Court found Georgia law did not recognize Plaintiff's implied cause of action. *Id*. Although Plaintiff brought an improper cause of action and the Court never reached the merits of the case in a "moral or abstract sense," the Court's decision satisfies this element of res judicata because Plaintiff *could* have brought a proper cause of action. Just as the plaintiff in *Piedmont Cotton Mills* had the opportunity to file a complaint that complied with Georgia law, Plaintiff could have filed a viable claim that Georgia recognized in *Pepper II*, as Judge Thrash suggested he should have.[4] Both here and in *Piedmont Cotton Mills*, the original claims failed not due to mere legal technicalities, but rather because of substantive inadequacies in the claims themselves. This indicates that Plaintiff had

---

[4] In his order, Judge Thrash wrote, "[o]f course, this does not prevent the Petitioner from seeking to recover using some other cause of action, such as those found in the laws of torts or contract." *Pepper II*, 262 F. Supp. 3d at 1382. Plaintiff interprets this sentence as Judge Thrash's recommendation that he file the instant suit with a proper cause of action. (Dkt. 28 at 5.) When read in context, however, it is clear that Judge Thrash's words do not suggest that Plaintiff file a second suit, but rather that Georgia's prohibition on implied causes of action would not have prevented Plaintiff from bringing, for example, breach of contract or breach of fiduciary duty claims in his original action.

a full and fair opportunity to litigate his prior suit and the Court adjudicated its merits.

### 4. The declaratory judgment exception to res judicata does not apply here

Though binding, a declaratory judgment is supplemental in nature and is sometimes exempt from the ordinary application of res judicata. *See Empire Fire and Marine Ins. Co. v. J. Transp., Inc.*, 880 F.2d 1291, 1295 (11th Cir. 1989). The Declaratory Judgment Act, which codifies this exception, provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted." 28 U.S.C. § 2202. Under this Act, ordinary principles of res judicata "cannot be applied automatically to judgments dismissing suits for declaratory relief without stated reasons." *Empire Fire*, 880 F.2d at 1294–95 (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978)). Indeed, if the law required parties to bring all possible claims and counterclaims in seeking a declaration from the court, it would thwart declaratory judgment actions' purpose of supplementing other types of litigation by providing a remedy that is less harsh than coercive relief. *See Seminole Tribe of Fla. v. Biegalski*, 757 F. App'x 851,

857 (11th Cir. 2018); *see also See Harborside Refrigerated Servs., Inc. v. Vogel*, 959 F.2d 368, 373 (2d Cir. 1992).

Federal courts have consistently limited this declaratory judgment exception, however, to cases where a party seeks *only* declaratory relief in its prior action, and not coercive relief. *See Seminole Tribe of Fla.*, 757 F. App'x 858 (citing *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 164 (4th Cir. 2008) and *Allan Block Corp. v. Cty. Materials Corp.*, 512 F.3d 912, 916 (7th Cir. 2008)). When a plaintiff seeks coercive relief, such as damages or an injunction, an action is nothing less than a "full-scale legal contest," thus disqualifying the case from the declaratory judgment exception. *See Harborside*, 959 F.2d at 373. "[W]here plaintiffs have combined a request for declaratory relief with claims for monetary or injunctive relief, federal courts have consistently refused to apply the declaratory-judgment exception." *Seminole Tribe of Fla.*, 757 F. App'x at 858 (citing *ASARCO, L.L.C. v. Mont. Res., Inc.*, 858 F.3d 949, 956 (5th Cir. 2017)).

Because Plaintiff's prior declaratory action included a claim for coercive relief, the declaratory action exception does not apply here. In

his original petition for declaratory judgment, Plaintiff included the following prayers for relief:

> 4. That the Court enter an award of $1,000,000 in damages against Respondents and in favor of Petitioner to contribute towards the satisfaction of the Consent Judgment against ASI and in favor or [sic] Petitioner.

> 5. That the Court enter an award of $1,500,000 in damages against Respondents and in favor of Petitioner to contribute towards the satisfaction of the Consent Judgment as to Crossclaims against ASI and in favor or [sic] Florida Fuel and Petroleum Realty.

First Amended Complaint, *Pepper II*, ECF No. 18 at 25.

Disregarding this established limitation, Plaintiff argues that, just as in *Empire Fire*, the declaratory judgment exception applies to this case and, therefore, the instant suit should not be barred. *Empire Fire* also involved a personal injury action, in which the plaintiff sought coverage under two insurance policies. 880 F.2d at 1295. After one of the policies was improperly cancelled, there was a dispute between the two insurance companies over which policy should apply. *Id.* One of the insurance companies sought a declaration of rights, and a district court issued a declaratory judgment finding both insurance companies liable. *Id.* The same company then filed a subsequent action seeking reimbursement from the insured. *Id.* The insured sought summary judgment, arguing

that the principle of res judicata barred the insurance company from litigating this issue because it could have been raised in the declaratory judgment action. *Id.* The Eleventh Circuit ultimately determined that, because the prior action sought only declaratory relief, res judicata did not apply. *Id.* at 1296. Applying the declaratory judgment exception, the court could not bar the insurance company's claim. *Id.* at 1296.

*Empire Fire* can be distinguished from the present case. The insurance company in *Empire Fire* sought only a declaration of rights in the original suit, but in *Pepper II* Plaintiff sought both declarations and money damages from the Court. And Courts have consistently held that a request for coercive relief takes an action outside the bounds of the declaratory judgment exception and into res judicata. *See, e.g., Seminole Tribe of Fla.*, 757 F. App'x at 858.

The Court finds the doctrine of res judicata precludes Plaintiff's claims against Covington, TAPCO, and Prime Rate. The Court grants those Defendants' motions to dismiss.

## B.    Seguros

Plaintiff has asserted breach of contract and breach of fiduciary duty claims against Seguros.[5]  Seguros has moved to dismiss both claims for failure to state a claim upon which relief can be granted.  Seguros also asserts that it has not been properly served.  The Court will address each of Seguros's arguments.

### 1.    Breach of Contact Claim

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130 (11th Cir. 2014) (quoting *Norton v. Budget Rent A Car Sys., Inc.,* 705 S.E.2d 305, 306 (Ga. Ct. App. 2010)). "[T]he party asserting the existence of a contract has the burden of proving its existence and its terms." *Sherman v. Dickey*, 744 S.E.2d 408, 411 (Ga. Ct. App. 2013).

---

[5] Plaintiff alleges the same claims against both Seguros and TAPCO. Because the Court has found that the doctrine of res judicata bars Plaintiff's claims against TAPCO, the Court will not further address Plaintiff's breach of contract and breach of fiduciary duty claims against TAPCO.

In Count 1, Plaintiff alleges that Seguros (and Covington and TAPCO) breached their implied covenant of good faith and fair dealing under the policy by making ASI overpay premiums; failing to credit ASI with the advanced premiums it paid; and prematurely cancelling the policy when they knew or should have known that no premium payments were due. Plaintiff asserts ASI suffered $1.5 million in damages in the *Pepper I* lawsuit due to the breach, and he can collect those damages because of the assignment.

Seguros argues it (1) did not have a contractual relationship with Mitamurshed or ASI; (2) if there was a contractual relationship it was at most an implied contract governed by a four-year statute of limitations; (3) Seguros was not involved in the terms of the financing agreement between Prime Rate and Mitamurshed/ASI; and (4) it did not cancel the insurance policy. The Court agrees that Seguros was not a party to the insurance policy.

"Generally, a breach of contract claim may only be maintained against a party to the contract, and an insurance contract is no exception to that general rule." *Atlanta Glob. Res., Inc. v. First Ins. Funding Corp.*, No. 1:18-CV-01932-AT, 2019 WL 3557891, at *5 (N.D. Ga. Mar. 26, 2019)

(citing *Adams v. UNUM Life Ins. Co. of Am.*, 508 F. Supp. 2d 1302, 1316 (N.D. Ga. 2007)). Plaintiff alleges that the policy was a contract between ASI and Covington, Seguros, and TAPCO, but the insurance policy does not support this allegation because Seguros is not a named party to the contract.[6] (*Compare* Dkt. 1 ¶ 52, *with* Dkt. 27-2.) *See also Merritt v. Hub Int'l Sw. Agency Ltd.*, No. 1:09-CV-00056-JEC, 2011 WL 4026651, at *8 (N.D. Ga. Sept. 12, 2011) (granting insurance agent summary judgment on insured's claim that the agent breached an insurance policy contract); *Atlanta Glob. Res., Inc.*, 2019 WL 3557891, at *5 (granting insurance agent's motion for judgment on the pleadings because the agent was not party to the insurance contract). Seguros does business under the name ATL Insurance LLC, and the policy only identifies that business as the retail agency. And Seguros is not a third-party beneficiary of the contract under Georgia law. *See Keith v. Alexander Underwriters Gen. Agency, Inc.*, 487 S.E.2d 673 (Ga. Ct. App. 1997) ("[A]n insurance agent is not a

---

[6] While the Court accepts the allegations of facts in Plaintiff's Complaint as true, a document referenced in a plaintiff's complaint controls if general allegations in the complaint differ from the document's contents. *See, e.g., Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206–1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

third-party beneficiary of the contract of insurance between the insurer and the policyholder."). At most, Plaintiff asserts that "Seguros was the agent/broker/producer under the Policy" and generally cites "Exhibit C." (Dkt. 27 at 5.) But Exhibit C (Dkt. 27-3) is the finance agreement, not the insurance policy.

Instead, Plaintiff asserts that Seguros breached the terms of the finance agreement — a claim that Plaintiff does not raise in his complaint. The parties to the top portion of the finance agreement are Prime Rate Premium Finance Corporation, Inc. and the named insured. (Dkt. 27-3 at 2–3.) In the bottom portion of the agreement, Victor Soto, Seguros's registered agent, CEO, and secretary, who was acting as the agent/broker/producer/, warranted and agreed to undertake obligations to Prime Rate, not Mitamurshed, Petroleum Realty, ASI, or Plaintiff. Specifically, Soto and Seguros warranted and agreed that

> 1. [t]he insurance policies listed on this Agreement are in force and the information and premiums are correct . . . [and] 7. [t]o hold in trust for [Prime Rate] any payments made or credited to the insured through or to [Seguros], directly or indirectly, actually or constructively by the insurance companies or [Prime Rate] and to pay the monies as well as any unearned commissions to [Prime Rate] promptly upon demand to satisfy the indebtedness of the Insured.

(*Id.*) These warranties and the others included in the certification are contractual obligations between Seguros and Prime Rate.

The Court dismisses Plaintiff's breach of contract claim (Count 1) against Seguros.

## 2. Breach of Fiduciary Duty

Georgia courts generally do not allow an insured to sue an insurer or the insurer's agent for breach of fiduciary duty. The Court discussed this issue in *Prime Management Consulting & Inv. Services, LLC v. Certain Underwriters at Lloyd's London*, No. 1:07-cv-1578-WSD, 2007 WL 4592099, at *5 (N.D. Ga. Dec. 28, 2007). It stated:

> In Georgia, the existence of a "confidential relationship" can create independent duties, the breach of which may constitute a tort. *Monroe v. Board of Regents of the Univ. Sys. of Ga.,* 602 S.E.2d 219, 222 (Ga. [Ct.] App. 2004). Georgia defines a "confidential relationship" as: "[a]ny relationship . . . whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." [GA. CODE ANN.] § 23-2-58. The party asserting the existence of a "confidential relationship" bears the burden of establishing its existence. *Monroe,* 602 S.E.2d at 222.
>
> Georgia courts have repeatedly and consistently held that the insurer-insured relationship does not itself impose fiduciary responsibilities upon the insurer. *Walsh v. Campbell,* 202

26

S.E.2d 657, 661 (Ga.[ Ct. ]App. 1973); *State Farm Fire & Cas. Co. v. Fordham,* 250 S.E.2d 843, 845 (Ga. [Ct.] App. 1978); *Tate v. Aetna Cas. & Surety Co.,* 253 S.E.2d 775, 777 (Ga. [Ct.] App. 1979); *Monroe,* 602 S.E .2d at 222; *Nash v. Oh. Nat. Life. Ins. Co.,* 597 S.E.2d 512, 518 (Ga. [Ct.] App. 2004); *Am. Gen. Life Ins. & Accident Ins. Co. v. Ward,* 509 F. Supp. 2d 1324, 1331 (N.D. Ga. 2007). The relationship between the two parties is governed instead by the insurance agreement.

Georgia courts allow an insured to sue for breach of fiduciary duty only if he "sustains damages other than damages covered by the insurance contract." *Delancy v. St. Paul Fire & Marine Ins. Co.,* 947 F.2d 1536, 1546 (11th Cir. 1991) (internal quotation marks omitted). The parties have identified, and the Court has independently confirmed, only one circumstance where Georgia courts allow tort actions for breach of fiduciary duties between an insured and his insurer: the insurer owes fiduciary duties of good faith when defending or settling a third-party claim on behalf of the insured. *E.g., Thomas v. Atlanta Cas. Co.,* 558 S.E.2d 432, 438-39 (Ga.App.2001); *Arrow Exterminators,* 136 F. Supp. 2d at 1354 ("This special exception most commonly arises in the insurance context in those situations where an insurer refuses to settle a claim.").

*Id*. at \*5. Although Plaintiff asserts his claims against Seguros, who he alleges was ASI's insurance agent or broker, the Court finds the reasoning in *Prime Management Consulting and Insurance Services, LLC*, still applies here. Seguros was not a party to the insurance policy and did not refuse to settle the claims against or defend Florida Fuel or Petroleum Realty, which leased the property from ASI, in the *Pepper I*

lawsuit.  Plaintiff cannot assert a breach of fiduciary duty claim against Seguros on that basis.

Under Georgia law, however, "[g]enerally speaking, an insurance agent who undertakes to procure a policy of insurance for his principal but negligently fails to do so may be held liable to the principal for any resulting loss." *Atlanta Women's Club v. Washburne*, 427 S.E.2d 18, 20 (Ga. Ct. App. 1992) (citations omitted); *see also Johnson v. Pennington Ins. Agency,* 251 S.E.2d 116, 117 (Ga. Ct. App. 1978) (stating that the duty to procure insurance coverage is a fiduciary duty that an insurance agent owes its principal).  "But in order for this principal to apply, a duty must exist on the part of the agency toward the principal." *Clark, Davis & Easley Ins. Agency, Inc. v. Tile Tech., Inc.*, 459 S.E.2d 450, 451 (Ga. Ct. App. 1995).  "However, where the agent does procure the requested policy and the insured fails to read it to determine which particular risks are covered and which are excluded, the agent is thereby insulated from liability, even though he may have undertaken to obtain 'full coverage.' " *Atlanta Women's Club,* 427 S.E.2d at 20; *see also Canales v. Wilson Southland Ins. Agency*, 583 S.E.2d 203, 204 (Ga. Ct. App. 2003) ("Generally, an insured is obligated to examine an insurance policy and

to reject it if it does not furnish the desired coverage.").  This "duty to read" rule is not an issue here, because Seguros has not argued that ASI, Mitamurshed, or any other party failed to properly read the insurance policy or finance agreement.

Plaintiff alleges Seguros acted as ASI's agent in connection with obtaining the insurance policy.  (Dkt. 1 ¶¶ 18, 22, 72.)  Plaintiff also alleges that Seguros had a business relationship with Prime Rate and would obtain insurance policies for its insureds while Prime Rate would provide financing to the insureds to pay the insurance premiums.  (*Id*. ¶¶ 19–20, 23, 74–75.)  Plaintiff thus alleges that Seguros worked as a dual agent of its insureds and Prime Rate.  Plaintiff also alleges that Seguros had access to all of its insureds' accounts with Prime Rate.  (*Id*. ¶¶ 21, 76.)  Plaintiff further alleges that Seguros breached its fiduciary duty to ASI by knowingly causing it to overpay policy premiums to Prime Rate; not insisting that Prime Rate and Covington credit ASI for the advanced premiums it paid; and allowing Prime Rate and Covington to prematurely cancel the policy even though no payments were due. Plaintiff has thus pled sufficient facts to state the claim that Seguros negligently failed to procure adequate insurance coverage for ASI.

Seguro argues that Plaintiff's claim should be dismissed because it duplicates Plaintiff's breach of contract claim. Seguros cites *Hamburger v. PFM Capital Management*, 649 S.E.2d 779 (Ga. Ct. App. 2007), to support its argument. But the plaintiff's claims in *Hamburger* arose from an investment advisory company allegedly making risky investments with a retirement account. *Id.* at 781. Negligent failure to procure insurance claims are different and Georgia courts have allowed parties to assert claims that a defendant both breached an insurance policy contract's terms and negligently failed to procure insurance. *See, e.g., J. Smith Lanier & Co. v. Se. Forge, Inc.*, 630 S.E.2d 404, 405 (Ga. 2006); *see also Atlanta Women's Club, Inc.*, 427 S.E.2d at 20.

Seguros also argues that Plaintiff's breach of fiduciary duty claim is barred by the statute of limitations. Both Plaintiff and Seguros assert that the statute of limitations is the same as that for a breach of contract claim, but they dispute whether a written contract exists. The Court, however, construes Plaintiff's breach of fiduciary duty claim as a failure to procure adequate insurance tort claim. The statute of limitations on Plaintiff's failure to procure adequate insurance claim is four years and it began to run when Covington first denied Plaintiff coverage. *See Saye*

*v. UnumProvident Corp.*, No. 1:07-cv-31-TWT, 2007 WL 2331050, at *5 (N.D. Ga. Aug. 10, 2007) (discussing *Hoffman v. Ins. Co. of N. Am.*, 245 S.E.2d 287, 288 (Ga. 1978)); *see also Occidental Fire & Cas. of N.C. v. Goodman*, 793 S.E.2d 606, 611 (Ga. Ct. App. 2016) ("[T]he Supreme Court in *Hoffman* held that the statute of limitation in [a negligent failure to procure coverage] tort case begins to run from the date damage was sustained, not from the date of the breach.").  The statute of limitations thus began to run on November 16, 2015, when Covington refused to defend the *Pepper I* lawsuit or provide coverage under the policy.  (Dkt. 1 ¶ 38.)  Plaintiff filed his complaint in this action on October 3, 2017, less than four years after Covington denied coverage.  Plaintiff's failure to procure adequate insurance coverage claim against Seguros is not time barred.

The Court denies Seguros's motion to dismiss Plaintiff's breach of fiduciary duty, or failure to produce adequate coverage, claim.

### 3.    Service of Process

Seguros argues that the Court should dismiss Plaintiff's complaint under Rule 12(b)(5) of the Federal Rules of Civil Procedure because Plaintiff failed to properly serve it with process.  After Seguros filed its

motion to dismiss, Plaintiff served Seguros's registered agent, Victor Soto, with the complaint and summons. (Dkts. 26; 27 at 3.) The Court will not dismiss Plaintiff's claims against Seguros on this basis.

## IV. Conclusion

The Court **GRANTS** Prime Rate's, TAPCO's, and Covington's Motions to Dismiss for Failure to State Claim (Dkts. 19; 22; 24) and **GRANTS IN PART** and **DENIES IN PART** Seguros's Motion to Dismiss Plaintiff's Complaint by Special Appearance (Dkt. 17).

**SO ORDERED** this 25th day of November, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE